UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ROBERTO GONZALEZ | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-6387 |
| PREMIER QUALITY IMPORTS, LLC | SECTION "B"(2) |

### ORDER AND REASONS

Before the Court is Defendant Premier Quality Imports d/b/a Premier Honda("Defendant Honda") Motion for Summary Judgment (Rec. Doc. 10), Plaintiff Roberto Gonzalez' ("Plaintiff") Response in Opposition (Rec. Doc. 11), and Defendant Honda's Motion for Leave to File Reply (Rec. Doc. 12). For the reasons discussed below,

**IT IS ORDERED** that the Motion for Leave to File Reply (Rec. Doc. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Honda's Motion for Summary Judgment (Rec. Doc. 10) is **GRANTED** and Plaintiff's case is **DISMISSED**.

**FACTS AND PROCEDURAL HISTORY**

The instant controversy emanates from an employment dispute between Plaintiff and Defendant Honda. Defendant Honda hired Plaintiff for the position of Parts Manager in November 2014. Rec. Docs. 11-2 and 10-12. Plaintiff, an American citizen of Cuban descent, was hired by the Service and Parts Director Walter Cannon ("Cannon") and the Regional Parts and Services Director John

1

Hightower ("Hightower"); a decision that was approved by General Manager Ashley Collins ("Collins"). *Id*.

Plaintiff alleges that Cannon referred to him as a "hotheaded Mexican" on several occasions where Plaintiff had disagreements with other employees or managers. Rec. Doc. 11-2 at 2. Plaintiff denies ever receiving "written" disciplinary action at any time during his employment with Defendant Honda. Nevertheless the record reflects that Plaintiff engaged in several disputes with other co-workers during his tenure with Defendant Honda. Specifically, in December 2014—two months after his hire—Cannon submitted a disciplinary action report (the "Report") regarding a dispute between Plaintiff and at least three female co-workers. Rec. Doc. 10-5. The Report provides that Plaintiff was counseled regarding his temper, maintaining a positive tone when counseling employees, and cautioned against negative gossiping. *Id*. Possible suspension or termination was also noted. *Id*.

Defendant Honda alleges that about two months after the incident documented in the Report, Plaintiff was involved in another altercation with an employee he supervised—Nicole Charlot ("Charlot"). Defendant Honda asserts that Charlot complained that Plaintiff slapped her hand down and told her not to point at him when speaking to him. Rec. Doc. 10-12 at 3. The complaints about Plaintiff's behavior towards Charlot were an ongoing occurrence. *Id*. Plaintiff alleges that during disagreements with employees,

such as those mentioned above, Cannon would refer to Plaintiff as a "hotheaded Mexican." Rec. Doc. 11-2 at 2-3.

On June 27, 2016, Plaintiff attended a training session provided by Petra Oil Company ("Petra") for certain Defendant Honda employees (the "Training"). Rec. Docs. 10-12 and 11-2. During the Training Plaintiff was involved in a dispute with another attendant, a Service and Parts Manager at Premier Nissan, Danny Giardina ("Giardina"). Rec. Doc. 11-2 at 6. The undisputed facts present that during a sales presentation by a Petra representative, Plaintiff disagreed with certain sales expectations for the New Orleans area. Specifically, Plaintiff interjected disagreement with presented statistics that 7 out of 10 customers would purchase Petra products if presented the opportunity. Rec. Docs. 11-2 and 10-12. Giardina disagreed with Plaintiff's opposition to the presenter's information. *Id*.

After the above disagreement between Plaintiff and Giardina, the meeting continued. However, Plaintiff subsequently observed other employees in the room laughing and presumably whispering about him. Rec. Docs. 11-2 at 7 and 10-12 at 5. Plaintiff stood up from his seat and approached the other individuals he felt were laughing at him and said, "Are you laughing at me?" *Id*. While the specific facts of the altercation are disputed, i.e., whether or not Plaintiff threatened to "beat up" Giardina, it is undisputed

that Plaintiff was ultimately asked to leave the Training by the Petra representative leading the Training, Mr. Gacita. *Id*.

Defendant Honda conducted an investigation of the incident. Plaintiff denies threatening Giardina; however, multiple witnesses negate Plaintiff's recollections. Toyota Service and Parts Director who was at the meeting, Chad Montgomery, informed Cannon that Plaintiff was out of control, threatened Giardina, and that he perceived Plaintiff to be drunk at the meeting. Rec. Doc. 10-12 at 6. Moreover, witnesses Errol Mayfield, Kirk Hayes, Mark Smith, and Calvin Brown all reported that Plaintiff was drunk and aggressive from the outset of the Training. They account that he jumped up, shoved his chair aside and aggressively approached Giardina during the incident. The witnesses further reported that Plaintiff threatened to knock Giardina's "old ass out." Rec. Doc. 10-12. Plaintiff's employment with Defendant Honda was terminated on June 30, 2016. Rec. Doc. 1-12 at 8.

Plaintiff denies that he physically threatened Giardina. Rec. Doc. 11-2. However, in his email to Hightower on July 2, 2016, after his termination, Plaintiff admits that he should have "handled the situation differently" and agreed consequences should follow, maybe "probation, suspension, etc." Rec. Doc. 10-10. Plaintiff's email denies lunging or using profanity at Giardina; nevertheless concedes that he is "known to be a 'hot head'" and that his tone was "loud and aggressive." *Id*.

4

Defendant Honda filed the instant motion for summary judgment seeking dismissal of Plaintiff's claims for discriminatory discharge under 42 U.S.C. § 1981 and retaliation under the Louisiana Whistleblower Act. Rec. Doc. 10-1. Plaintiff opposes Defendant Honda's motion, asserting that he was discriminated against and subjected to being called a "hotheaded Mexican," and that the June 2016 incident was minor. Rec. Doc. 11.

**LAW AND ANALYSIS**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

**42 U.S.C. § 1981**

Section 1981 provides that all persons in the United States shall have the same contractual rights as white citizens. 42 U.S.C. § 1981(a). Claims of racial discrimination brought under § 1981 are governed under the same evidentiary framework applicable to

claims of employment discrimination brought under Title VII. *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir. 1996) (hereinafter "LaPierre"); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In the employment discrimination context, this Court is to focus on whether or not Defendant Honda intentionally discriminated against Plaintiff. *LaPierre*, 86 F.3d at 448. Intentional discrimination can be established through either direct or circumstantial evidence. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

**Direct Evidence**

The Fifth Circuit has defined "direct evidence" as evidence which, "if believed, proves the fact [in question] without inference or presumption." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003). Further, "statements or documents which show on its face that an improper criterion served as a basis-not necessarily the sole basis, but a basis-for the adverse employment action are direct evidence of discrimination." *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 415 (5th Cir.2003) (citing *Fierros v. Tex. Dept. of Health,* 274 F.3d 187, 192 (5th Cir.2001)).

Here, Plaintiff argues that Cannon's reference to Plaintiff as a "hotheaded Mexican" is direct evidence of discriminatory termination. However, this Court disagrees. The evidence that Plaintiff offers as direct evidence is insufficient to permit a

6

finding of discrimination by Defendant Honda without inference or presumption. As provided in *Krystek*:

> [F]or comments in the workplace to provide sufficient evidence of discrimination, they must be "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."

*Krystek v. Univ. of S. Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999). Yet, the record reflects that Plaintiff's primary claim of direct evidence is that Cannon referred to him as a "hotheaded Mexican" whenever Plaintiff lost his temper at work. However, this statement is not directly related to Plaintiff's protected status as Cuban. Rather, it is directly related to Plaintiff's inability to control his temper. For example, on one occasion when Plaintiff lost his temper he asserts that Cannon remarked to him, "there he goes again, there goes that hotheaded Mexican." To which Plaintiff responded, "I'm not Mexican." Cannon then replied, "Oh, no, you're right you're a hotheaded Cuban." Rec. Doc. 11-2 at 3. On a similar occasion Plaintiff recalls Cannon remarking that Plaintiff needed to "calm down," saying "you know how you people are, you got tempers like us Italians." *Id*. Taken as a whole the comments are insufficient to permit a conclusion of direct evidence of discrimination. The instant undisputed material factual record shows that Plaintiff's acknowledged behavior at the Training was

7

Defendant's reason for terminating Plaintiff, not his racial or ethnic heritage.

**Indirect evidence**

Plaintiff further submits that the statements made by Cannon offer circumstantial evidence of discriminatory termination. Rec. Doc. 11 at 11. As mandated by the Supreme Court's *McDonnell Douglas* framework, a plaintiff creates a presumption of intentional discrimination by establishing a *prima facie* case. *Id.* The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). "If the employer sustains its burden . . . the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).

Plaintiff also fails to create a *prima facie* case for discrimination under *McDonnell Douglass*. Such showing requires that Plaintiff prove: 1) he is a member of a protected class; 2) he was qualified for the position; 3) he suffered an adverse

employment action; and 4) other similarly situated individuals were treated more favorably. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). Plaintiff suffered an adverse employment action, not because he was Cuban or of Hispanic origin but because of his temper. Multiple witnesses accounted that he was the instigator in the situation, he was aggressive, and intoxicated. He was eventually asked to leave the Training by a third-party, Mr. Gacita from Petra. Importantly, Plaintiff admits being a "hotheaded" that should suffer consequences as a result of his behavior. Rec. Doc. 10-10. Plaintiff is not entitled to file suit simply because he disagrees with the extent of consequences arising from his misconduct. In addition, this was not the first instance of inappropriate aggression displayed by Plaintiff at work. There were no similarly situated individuals as Plaintiff was the aggressor. *See Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980) ("Here appellant was treated in a dissimilar manner from the white employee involved in the instant altercation, but the disparity of punishment resulted from a difference in conduct rather than racial motivation.").

Finally, even if Plaintiff's allegations were sufficient to assert a *prima facie* case, Plaintiff offers no evidence that Defendant Honda's termination based on Plaintiff's behavior at the

training was not a legitimate, nondiscriminatory reason for his termination.

**Louisiana Whistleblower Act**

Plaintiff also asserts a claim for retaliatory termination under the Louisiana Whistleblower Statute, La. Stat. §23:967. Plaintiff's failure oppose Defendant Honda's Motion in regards to its request to dismiss Plaintiff's Whistleblower claim is fatal. *See Ledet v. Fleetwood Enterprises, Inc.,* 245 F.3d 791 (5th Cir. 2000)("In *Batterton,* we reapproved and applied *Hargrave* 's holding that even a pleaded theory was waived when it was not raised in opposition to a motion for summary judgment.").

However, Plaintiff's whistleblower claim also fails on the merits. Louisiana's Whistleblower Statute provides that:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an

employment act or practice that is in violation of law.
La. Stat. § 23:967. "Claims under section 23:967 are analyzed under the familiar *McDonnell Douglas* framework," discussed *supra*. *Kirmer v. Goodyear Tire & Rubber Co.,* 538 F. App'x 520, 527 (5th Cir. 2013). Accordingly, Plaintiff must establish: 1) that Defendant Honda violated Louisiana law through a prohibited workplace act, 2) that Plaintiff advised Defendant Honda of the violation, 3)

that Plaintiff refused to participate in the prohibited practice or threatened to disclose such practice, and 4) that he was fired as a result. *Diaz v. Superior Energy Servs. LLC*, 341 F. App'x 26, 28 (5th Cir. 2009).

Plaintiff's Complaint alleges that Plaintiff became aware that Cannon would "alter his numbers downward" if he was not meeting his forecast. Rec. Doc. 1. Plaintiff further alleges that he "additionally became aware of other inappropriate practices, including, but not limited to, discrepancies in certain reporting of parts sales, pricing, and other issues. [Plaintiff] questioned the same [Cannon] on several occasions in conversations with Mr. Cannon, and Mr. Cannon was thus aware of [Plaintiff's] opposition to illegal practices." Rec. Doc. 1.

First, a violation of state law is an element of the claim. *Diaz v. Superior Energy Servs. LLC*, 341 F. App'x 26, 28 (5th Cir. 2009). Plaintiff's allegations are broad and fail to specify any actual violations of Louisiana law by Defendant Honda. While speculative and conclusory, even if we accept Plaintiff's claims that illegal activity occurred and that he conversed about such acts with Cannon, Plaintiff was neither pressured to participate nor did he threaten disclosure of said acts. Finally, Plaintiff was terminated because of his behavior at the Training, and he offers no sufficient evidence to support otherwise. As a result,

Plaintiff's claims fail to establish a *prima facie* case under the Louisiana Whistleblower Statute.

New Orleans, Louisiana, this 19th day of April, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE